UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RICKEY CLASABLANCA,

    Plaintiff,

  v.

KITSAP COUNTY and CONMED, LLC.,

    Defendants.

CASE NO. C19-5061 BHS

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

This matter comes before the Court on Defendant Kitsap County's ("Kitsap County") motion to dismiss, Dkt. 15, and Kitsap County and Conmed, LLC's ("Conmed") (collectively "Defendants") joint motion to dismiss, Dkt. 17. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants the motions for the reasons stated herein.

## I. PROCEDURAL HISTORY

On September 27, 2018, Plaintiff Rickey Clasablanca ("Clasablanca") filed a tort claim with the Kitsap County Clerk of the Board of Commissioners alleging negligence and deliberate indifference. Dkt. 14, ¶ 1.1–1.3. On November 28, 2018, Clasablanca filed

ORDER - 1

a complaint against the Kitsap County Sheriff's Department ("Sheriff's Department"), Kitsap County, and Conmed in the Kitsap County Superior Court for the State of Washington. Dkt. 1-1. On January 22, 2019, Kitsap County and the Sheriff's Department filed a notice of removal in this Court. Dkt. 1. On January 29, 2019, Kitsap County and the Sheriff's Department filed a motion to dismiss. Dkt. 9. On February 19, 2019, the parties stipulated that Casablanca would amend the complaint and remove the Sheriff's Department as a defendant and Kitsap County and the Sheriff's Department would withdraw their motion to dismiss. Dkt. 12.

On March 14, 2019, Clasablanca filed his amended complaint. Dkt. 14. On March 28, 2019, Kitsap County filed a motion to dismiss. Dkt. 15. Also on March 28, 2019, Defendants filed a joint motion to dismiss. Dkt. 17. On April 7, 2019, Casablanca responded to Kitsap County's motion to dismiss, Dkt. 19, and responded to Defendants' joint motion to dismiss, Dkt. 21. On April 19, 2019, Defendants replied to Casablanca's response to their motion, Dkt. 26, and Kitsap County replied to Clasablanca's response to its motion, Dkt. 27.

## II. FACTUAL BACKGROUND

Clasablanca was incarcerated in the Kitsap County Jail from February 12, 2016, to July 28, 2016. Dkt. 14, ¶ 2.2. Clasablanca worked in the jail's kitchen. *Id*. ¶ 2.3. On March 14, 2016, Clasablanca walked by an electrical outlet in the kitchen and was shocked by electricity. *Id*. ¶ 2.10. He was "startled by a sudden explosion and shower of sparks from the hazardous outlet" and sustained a burn to his leg. *Id*. ¶¶ 2.10–2.11.

1 | Recoiling from the injury, Clasablanca suffered a severe injury to his lower back. *Id.* ¶
2 | 2.11.
3 |       Kitsap County was notified that Clasablanca was injured, "but chose not to send
4 | medical personnel to examine and evaluate [Clasablanca's] injuries." *Id.* ¶ 2.12. Through
5 | Clasablanca's release date, his back injury was neither diagnosed nor treated. *Id.* ¶ 2.17.
6 | During this period, Clasablana alleges that Conmed and Kitsap County "engaged in,
7 | cooperated in, and displayed deliberate indifference to [Clasablanca's] injuries and not
8 | only denied him adequate diagnosis and medical care, but engaged in concerted efforts to
9 | create a false justification for refusing to diagnose and treat his severe back injury" and
10 | that Conmed's employees "intentionally [took] actions designed to ensure that
11 | [Clasablanca] would be denied diagnostic and medical care regarding his back injury."
12 | *Id.* ¶¶ 2.18, 5.4(c).

### III. DISCUSSION

Casablanca's amended complaint alleges claims for premises liability, negligence, and deliberate indifference against Kitsap County and for "professional/medical negligence" against Conmed. Dkt. 14. Kitsap County moves to dismiss Clasablanca's claim for negligence and premises liability. Dkt. 15. Conmed and Kitsap County move jointly to dismiss "all claims arising out of medical care." Dkt. 16.

**A.     Fed. R. Civ. P. 12(b)(6) Standard**

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*,

901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). Despite this, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

**B.    Evidence Outside the Complaint**

As a threshold matter, the Court must address Clasablanca's argument that "the Court should consider the statutory disclosures made prior to suit and take a dim view of a 12(b)(6) motion in which the Defendant pleads ignorance of the basis for the allegations against it based on the complaint alone." Dkt. 19 at 9. Washington State requires that individuals asserting a tort claim against government defendants submit the claim for review 60 days before filing their case in court. RCW 4.96.010, .020. The required "Standard Tort Claim" form involves substantial disclosure of information supporting the claim, such as police reports and medical records. *See* RCW 4.92.100; Dkt. 22-3 at 2. Clasablanca argues that because he complied with this requirement prior to filing his case, Defendants have "received a veritable cornucopia of evidence" and should fully

understand the case against them. Dkt. 19 at 9; *see also* Dkt. 21 at 13–16. In support of his response briefs, Clasablanca submits the 114-page tort claim form he submitted to Kitsap County and a 34-page letter he sent to Conmed "making a statutory offer to mediate in good faith and describing [Clasablanca's] complaints against Conmed." Dkts. 22, 22-4, 22-5.

However, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is not intended only as Clasablanca argues, to ensure a defendant has "sufficient facts to understand why it is being sued." Dkt. 19 at 9. A motion to dismiss under Fed. R. Civ. P. 12(b)(6) also tests whether a complaint contains enough facts to state a claim for relief that is plausible, not just conceivable. *Twombly*, 550 U.S. at 570. Clasablanca provides no authority for the proposition that an administrative exhaustion process relieves him of his obligation to draft a complaint which provides facts to support all of the required elements of his claims. *See Iqbal*, 556 U.S. at 678–79.

Further, in general a court may not consider matters outside the pleadings in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Fed. R. Civ. P. 12(d). Doing so requires treating the motion as a request for summary judgment under Fed. R. Civ. P. 56. *Id.*

In response to Kitsap County's motion to dismiss his premises liability claims, Clasablanca asks that if the Court grants Kitsap County's motion to dismiss, it grant the motion with leave to amend. Dkt. 19 at 10–11. Kitsap County argues that Clasablanca has converted the motion and requests that if the Court denies its motion to dismiss, it should grant summary judgment instead. While the Court will not consider the extrinsic

evidence Clasablanca has submitted on this motion, because the Court grants the motion to dismiss but finds the claims may be cured by amendment, the Court grants the motion to dismiss with leave to amend and denies Kitsap County's request for summary judgment.

In response to Defendants' joint motion to dismiss his medical care claims, Clasablanca asks the Court to convert the motion to dismiss to one for summary judgment, and then allow him to engage in discovery before submitting a response. Dkt. 21 at 17. Defendants ask the Court not to consider the extrinsic evidence submitted on the medical care claims and to grant the motion to dismiss. Dkt. 26 at 1. The Court finds that Clasablanca's claims do not survive the motion to dismiss but may be cured by amendment. Therefore, the Court will grant the motion to dismiss with leave to amend.

**C.     Merits**

    **1.      Premises Liability**

To state a claim for negligence, "the plaintiff must show (1) the existence of a duty to the complaining party, (2) a breach of that duty, (3) a resulting injury, and (4) that the breach was the proximate cause of the injury." *Reynolds v. Hicks*, 134 Wn.2d 491, 495 (1998). In general, for a possessor of land to breach his or her duty to an invitee, the possessor must have actual or constructive notice of the unsafe condition, or the possessor or his or her employees must have caused the unsafe condition. *Ingersoll v. DeBartolo, Inc.,* 123 Wn.2d 649, 652 (1994) (citing *Smith v. Manning's, Inc.*, 13 Wn.2d 573 (1942)); *Wiltse v. Albertson's Inc.*, 116 Wn.2d 452, 453–54 (1991). It is the invitee's

burden to show that the premises owner had actual or constructive notice of the hazard. *Tavari v. Walmart Stores, Inc.*, 176 Wn. App. 122, 307 (2013).

The parties agree that the applicable duty in this case is that of an owner of premises to an invitee. *See* Dkt. 15 at 4; Dkt. 19 at 4. Kitsap County argues that the allegations in Clasablanca's complaint fail to provide any factual basis that it had actual or constructive notice that the electrical outset was unsafe. Dkt. 15 at 5. Some allegations in Clasablanca's complaint regarding Kitsap County's alleged breach of duty could be construed as factual, such as that Kitsap County failed to regularly inspect the premises for defects in electrical outlets, failed to follow safety procedures for preventive maintenance, failed to repair the outlet, or failed to warn of its danger. *See* Dkt. 19 at 5–6 (citing Dkt. 14, ¶¶ 2.1–2.11). However, any of these theories of breach would need to contain an accompanying basis for causation. To satisfy the causation element on these theories, the complaint would have to include allegations making it plausible, not just possible, that the faulty outlet had persisted for some length of time such that Kitsap County should have discovered its faulty state. The complaint lacks these allegations.

Clasablanca also argues that the complaint "includes clear factual allegations of . . . how [he] alleges Defendants had actual notice of the defect"—that Kitsap County "created the defect" or "was aware of the defect through actual notice (employees, agents, or inmates had reported the defect)." Dkt. 19 at 6 (citing Dkt. 14, ¶ 2.9). Considering these allegations regarding affirmative acts and the previously discussed allegations regarding failure to act, it appears to the Court that Clasablanca's complaint sets out all possible ways Kitsap County could potentially be liable for the condition of

the outlet without including any facts or circumstances which permit the Court to "infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Therefore, Clasablanca's claims for premises liability are dismissed. While the Court understands that Clasablanca has already withdrawn his complaint and filed an amended version pursuant to stipulation of the parties, *see* Dkt. 27 at 3–4, the Court finds it is not absolutely clear that Clasablanca's claims cannot be cured by amendment. Therefore, the Court dismisses Clasablanca's premises liability claims without prejudice and with leave to amend.

### 2. Deliberate Indifference

The Court understands Clasablanca's claim for deliberate indifference to be a claim under 42 U.S.C. § 1983 that Kitsap County was deliberately indifferent to his serious medical need in violation of the Eight Amendment. "While local governments may be sued under § 1983, they cannot be held vicariously liable for their employees' constitutional violations." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013). To state a claim against a municipality under § 1983, a Plaintiff must allege sufficient facts to support a reasonable inference that the execution of a policy, custom, or practice was the "moving force" that resulted in the deprivation of his constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978). Because a municipality may not be sued under a *respondeat superior* theory, "[a] plaintiff must therefore show '*deliberate* action attributable to the municipality [that] directly caused a deprivation of federal rights.'" *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 603 (9th Cir. 2019) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 415 (1997)).

Clasablanca argues that paragraphs 4.2–4.10 of his amended complaint contain specific facts showing a *Monell* violation. Dkt. 21 at 10–13 (citing Dkt. 14, ¶¶ 4.2–4.10). In fact, the cited paragraphs contain no specific facts which suggest deliberate action attributable to Kitsap County directly causing a deprivation of federal rights. *See Horton*, 915 F.3d at 592. Clasablanca alleges that Kitsap County hired Conmed to provide medical care to inmates, that Kitsap County "negligently failed to provide reasonable medical diagnostic effort and reasonable medical care" to him, that Kitsap County "engaged in a pattern of deliberate indifference" to his medical condition "which was the result of broad policies, customs, practices, and procedures implemented by [Conmed]," and that Kitsap County was deliberately indifferent "when its employees, following a common practice which is known and prevalent in the Kitsap County Jail, cooperated with [Conmed] to create a record in order to try to justify denying prisoners medical treatment." Dkt. 14, ¶¶ 4.2–4.9. Earlier in the complaint, Clasablanca alleges that Kitsap County was aware of his injury "via actual notice," but "chose not to send medical personnel to examine and evaluate" his injuries. *Id.* ¶ 2.1. These allegations are simply legal conclusions, which the court is not bound to accept as true. *Iqbal*, 556 U.S. at 678.

While it is certainly *possible* that someone told a medical provider or guard that Clasablanca was injured and needed medical treatment and that these responsible parties not only failed to refer Clasablanca for treatment but recorded false or misleading statements in the medical or inmate records, and that these actions were taken according to jail practice, Clasablanca has simply not provided any facts or circumstances to bring his allegations past the threshold of plausibility. *Twombly*, 550 U.S. at 557. Therefore, the

Court grants Defendants' motion to dismiss, but grants leave to amend as it is possible that Clasablanca's claims may be cured by amendment.

### 3. Professional/Medical Negligence

The elements of a claim that a health care provider breached his or her duty to a patient by failing to follow the standard of care are set out in RCW 7.70.040. The plaintiff must prove that: "(1) [t]he health care provider failed to exercise that degree of care, skill and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the State of Washington, acting in the same or similar circumstances," and "(2) [s]uch failure was a proximate cause of the injury complained of." RCW 7.70.040.

Clasablanca alleges that Kitsap County was aware "via actual notice" of his injuries, that Kitsap County contracted with Conmed to provide some medical services to inmates, and that Kitsap County and Conmed "negligently failed to diagnose and treat" his severe back injury and "not only denied him adequate diagnostic and medical care, but engaged in concerted efforts to create a false justification for refusing to diagnose and treat his severe back injury." Dkt. 21 at 6 (citing Dkt. 14, ¶¶ 2.1–2.8). Again, while it is entirely possible that these things occurred, Clasablanca has failed to match his legal allegations with basic facts—with respect to this claim, Clasablanca has failed to even articulate whether or not he had any interaction with a particular medical provider who may be found to have failed to provide the standard of care. Therefore, the Court grants Defendants' motion to dismiss, but grants leave to amend as it is possible that Clasablanca's claims may be cured by amendment.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Clasablanca's claims are **DISMISSED without prejudice** and with leave to amend. Clasablanca may file an amended complaint as stated herein no later than June 14, 2019.

Dated this 3rd day of June, 2019.

BENJAMIN H. SETTLE
United States District Judge